**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Scott Richie, ) | No. CV 11-01583-PHX-NVW |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Michael J. Astrue, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Jeremy Scott Richie seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits and supplemental security income under the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     Background**

  **A.     Factual Background**

Richie was born on September 15, 1975.  He has a tenth grade education and previously worked as a security guard, landscaper, and carpet installer.  He has been diagnosed with rheumatoid arthritis, depression, and polysubstance dependence in full remission.

**B.     Procedural History**

On July 23, 2007, Richie applied for disability insurance benefits and supplemental security income, alleging disability beginning March 1, 2006. The application was denied on initial review and again on reconsideration, after which Richie requested that his claim be heard by an ALJ. On December 7, 2010, an administrative hearing was held at which Richie testified and was represented by counsel. Thomas M. Mitchell, Ph.D., an impartial vocational expert, also appeared at the hearing. On January 13, 2011, the ALJ issued his decision that Richie was not disabled within the meaning of the Social Security Act.

The Appeals Council denied Richie's request for review of the ALJ's unfavorable decision, making that decision the final decision of the Commissioner. On August 11, 2011, Richie sought judicial review of the decision pursuant to 42 U.S.C. § 405(g).

**II.     Standard of Review**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

1    The ALJ is responsible for resolving conflicts in medical testimony, determining
2 credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.
3 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for
4 drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v.*
5 *Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III.    Five-Step Sequential Evaluation Process

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). If the ALJ determines that the claimant is disabled or not disabled at any step, the ALJ does not continue to the next step. The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If so, the claimant is not disabled and the inquiry ends. *Id.* At the step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meet or equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## IV. Analysis

At step one, the ALJ found that Richie has not engaged in substantial gainful activity since March 1, 2006, the alleged onset date of disability. At step two, the ALJ found that Richie had the following impairments that are severe when they are considered in combination: "seropositive rheumatoid arthritis; a major depressive disorder; an anxiety disorder, not otherwise specified; and polysubstance abuse in remission." At step three, the ALJ found that Richie did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Richie does not raise any issues related to the ALJ's determinations at the first three steps of the five-step sequential evaluation process.

The ALJ determined that Richie:

> has the residual functional capacity to perform to perform light work with restriction as light work is defined in 20 CFR 404.1567(b) and 416.967(b). The claimant should never crawl, crouch, climb, squat, or kneel. He cannot use his legs or feet for pushing or pulling and cannot use his upper extremities for work above shoulder level. He can perform only unskilled jobs.

At step four, the ALJ determined that Richie is unable to perform any of his past relevant work. At step five, the ALJ concluded that, considering Richie's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Richie could perform.

### A. Weighing Medical Source Evidence

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A

- 4 -

1 treating physician's opinion is afforded great weight because such physicians are
2 "employed to cure and [have] a greater opportunity to observe and know the patient as an
3 individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating
4 physician's opinion is not contradicted by another physician, it may be rejected only for
5 "clear and convincing" reasons, and where it is contradicted, it may not be rejected
6 without "specific and legitimate reasons" supported by substantial evidence in the record.
7 *Lester,* 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating
8 physician's subjective judgments in addition to his clinical findings and interpretation of
9 test results. *Id.* at 832-33.

10 Further, an examining physician's opinion generally must be given greater weight
11 than that of a non-examining physician. *Id.* at 830. As with a treating physician, there
12 must be clear and convincing reasons for rejecting the uncontradicted opinion of an
13 examining physician, and specific and legitimate reasons, supported by substantial
14 evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at
15 830-31.

16 The opinion of a non-examining physician is not itself substantial evidence that
17 justifies the rejection of the opinion of either a treating physician or an examining
18 physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may
19 also serve as substantial evidence when the opinions are consistent with independent
20 clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that
21 an ALJ may consider when evaluating any medical opinion include "the amount of
22 relevant evidence that supports the opinion and the quality of the explanation provided;
23 the consistency of the medical opinion with the record as a whole; [and] the specialty of
24 the physician providing the opinion." *Orn*, 495 F.3d at 631.

25 Moreover, Social Security Rules expressly require a treating source's opinion on
26 an issue of a claimant's impairment be given controlling weight if it is well-supported by
27 medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

28

- 5 -

1  with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a
2  treating source's opinion is not given controlling weight, the weight that it will be given is
3  determined by length of the treatment relationship, frequency of examination, nature and
4  extent of the treatment relationship, relevant evidence supporting the opinion, consistency
5  with the record as a whole, the source's specialization, and other factors. *Id.*
6  Finding that a treating physician's opinion is not entitled to controlling weight
7  does not mean that the opinion should be rejected:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p). Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

### 2. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

If the ALJ rejected a treating physician's contradicted opinion, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record. *See Lester,* 81 F.3d at 830. Richie contends the ALJ assigned "some probative weight" to the opinion of treating rheumatologist Michael J. Fairfax, D.O., failed to set forth sufficient reasons for crediting or rejecting Dr. Fairfax's opinion, and effectively rejected Dr. Fairfax's assessment without providing sufficient reasons. In fact, the ALJ rejected only portions of Dr. Fairfax's assessment and gave specific and legitimate reasons for doing so.

- 6 -

Regarding Dr. Fairfax's assessment, the ALJ stated:

> Dr. McClure [Richie's current primary care provider] referred the claimant to a rheumatologist, Michael J. Fairfax, D.O., who the claimant began seeing in March 2010. . . . Dr. Fairfax noted that the claimant had mild synovitis involving his hand and wrist joints and diagnosed him with seropositive rheumatoid arthritis with active synovitis. X-rays of the claimant's hands, knees, and feet dated April 15, 2010 reveal some mild degenerative changes of both hands and feet. The claimant continued to complain of pain, stiffness, and fatigue, but by August 2010, he had a normal range of motion in all joints, including his wrists, with some crepitus in both knees [].
>
> . . . .
>
> Dr. Fairfax completed a medical assessment regarding the claimant's ability to perform work related physical activities on December 1, 2010. In it, he opined that the claimant can stand and walk for two hours in an eight-hour day and sit for three to four. He can lift and carry 10 pounds occasionally and less than 10 pounds frequently. He must alternate between sitting and standing every one to two hours. He can occasionally stoop and crouch, but should never climb, balance, kneel, or crawl. He can use both hands to handle and feel frequently, but can reach only occasionally and should never engage in tasks requiring fine manipulation. He should also avoid heights, moving machinery, and temperature extremes. The claimant's pain frequently affects his attention and concentration and frequently causes deficiencies in concentration, persistence, or pace. The pain is affected by changing weather, movement, stress, cold, humidity, and static position [].
>
> Although Dr. Fairfax is the claimant's treating rheumatologist, his opinion is not entirely consistent with the medical evidence of record including his own treatment notes. The claimant's current mental health provider consistently rates his concentration as adequate, and Dr. Fairfax's records do not indicate that the claimant has difficulty with this task. Although the claimant complains about problems using his hands, the range of motion in his wrists is normal and he has only mild synovitis of the joints in his hands. From the claimant's medical records, it is not clear why he needs to alternate positions every hour and Dr. Fairfield [*sic.*] offers no explanation for this finding. The claimant's muscle strength is routinely described as normal and while his condition limits his ability to lift and carry to some extent, Dr. Fairfield's [*sic.*] limitation in this area is extreme. The claimant does have knee pain with crepitus, which limits his ability to engage in postural activities. For these reasons, the undersigned gives some probative weight to Dr. Fairfax's opinion.

Thus, the ALJ credited Dr. Fairfax's diagnosis of seropositive rheumatoid arthritis and his assessment that Richie's knee pain with crepitus required limitations, *i.e.*, no crawling, crouching, climbing, squatting, kneeling, or pushing/pulling with legs or feet. Dr. Fairfax opined that Richie could occasionally lift and/or carry 10 pounds and

- 7 -

1  frequently lift and/or carry less than 10 pounds, and the ALJ found that Richie could lift
2  no more than 20 pounds at a time with frequent lifting or carrying of objects less than 10
3  pounds.  *See* 20 C.F.R. § 404.1567(b) (defining "light work").

4  The ALJ rejected the portions of Dr. Fairfax's assessment that limit Richie's use of
5  his hands and require alternate positions every hour because Dr. Fairfax did not explain
6  the need for those limitations and they were not supported by his records.  The ALJ also
7  rejected Dr. Fairfax's opinion that Richie's pain frequently interferes with his attention
8  and concentration and that Richie frequently experiences deficiencies of concentration,
9  persistence, or pace resulting in failure to complete tasks in a timely manner because Dr.
10 Fairfax's records do not support that opinion and Richie's mental health provider
11 consistently rates his concentration as adequate.  Richie does not identify any of Dr.
12 Fairfax's records that support the opinions discounted by the ALJ, but contends only that
13 the mental health provider based his opinion solely on Richie's mental impairments and
14 did not consider the pain related to Richie's rheumatic impairments.  However, Richie
15 does not explain why, if Richie's rheumatic pain frequently causes mental deficiencies,
16 the mental health provider did not observe that.

17 Therefore, the reasons provided by the ALJ for rejecting portions of Dr. Fairfax's
18 assessment are specific, legitimate, and supported by substantial evidence in the record.

19 **B.     Subjective Symptom Testimony**
20 **1.     Legal Standard**

21 In evaluating the credibility of a claimant's testimony regarding subjective pain or
22 other symptoms, the ALJ is required to engage in a two-step analysis:  (1) determine
23 whether the claimant presented objective medical evidence of an impairment that could
24 reasonably be expected to produce some degree of the pain or other symptoms alleged;
25 and, if so with no evidence of malingering, (2) reject the claimant's testimony about the
26 severity of the symptoms only by giving specific, clear, and convincing reasons for the
27 rejection.  *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  To support a lack of

credibility finding, the ALJ is required to point to specific facts in the record that demonstrate that Richie's symptoms are less severe than he claims. *Id.* at 592. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citations omitted).

To be found credible regarding subjective pain or fatigue, a claimant is not required to: (1) produce objective medical evidence of the pain or fatigue itself, or the severity thereof; (2) produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom; or (3) show that his impairment could reasonably be expected to cause the severity of the alleged symptom, only that it could reasonably have caused some degree of the symptom. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

### 2. The ALJ Did Not Err by Finding Richie's Subjective Symptom Testimony Not Fully Credible.

The ALJ found that Richie's medically determinable impairments could reasonably be expected to cause only some of his alleged symptoms and that Richie's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible. Richie contends that the ALJ erred by failing to set forth specific, clear, and convincing reasons to reject Richie's testimony about the severity of his subjective symptoms.

Richie testified that he can stand approximately two hours at a time and sit approximately three hours at a time, but he usually does not do so because of physical pain, stiffness, and fatigue. He also testified that he drives, cleans the house, watches television, plays video games, uses a computer, and tries to stay as active as he can. He said that he stays in bed two to three hours on a good day and seven to eight hours on a

- 9 -

bad day because of physical fatigue. At the time of the hearing on December 7, 2010, Richie had taken Enbrel injections for a month and a week, and he testified that it takes approximately three months for Enbrel to reach its full ability to slow the effects of rheumatoid arthritis. Richie said that Enbrel and other medications he takes cause fatigue.

Richie also testified that he suffered depression at the age of 25 due to a bad marital relationship, it recurred when he became unable to continue his landscaping career, and it has increased with his inability to do things. He testified that he believed his anxiety was a side effect of medications.

The administrative hearing decision states:

> The claimant testified that he has pain and weakness in his hands and wrists, and difficulty moving his wrists. Although the claimant's medical records demonstrate that he does have some joint deformities in his hands, he is able to play video games and use a computer. He does chores around the house. All of these activities require the claimant to use his hands to a significant degree. In April, August, and November 2010, the claimant indicated that he is able to turn faucets on and off and lift a full cup or glass to his mouth without any difficulty and can dress himself, including tying shoelaces and fastening buttons with only some difficulty. In addition, the range of motion in his wrists has been intact during three of his four appointments with Dr. Fairfield [*sic*] []. Finally, the claimant has received only sporadic treatment for his arthritis and did not see a doctor for this condition at all between October 2006 and February 2008 or November 2008 and December 2009. The claimant does experience pain, but the relatively normal objective findings regarding his condition, his failure to seek regular treatment, and the activities he engages in indicate that this pain is neither as severe nor as limiting as the claimant states.
>
> The claimant also alleges that he spends most of his day in bed, in part because of his extreme fatigue. The claimant has complained periodically about fatigue to both his treating physician and his rheumatologist. In May 2010, he told Dr. McClure that his sleeping had improved, but he was still experiencing morning fatigue and in March and June, he stated to Dr. Fairfax that he was fatigued []. This is not a symptom he has endorsed consistently. Further, he has indicated that he tries to stay active during the day. He cleans the house, prepares meals, and goes to the grocery store. While the claimant's rheumatoid arthritis does cause some fatigue, his failure to consistently mention this symptom to doctors and his daily activities are not consistent with his statements regarding the extent of his fatigue.

- 10 -

1    The ALJ did not reject Richie's subjective symptom testimony entirely.  He
2 rejected Richie's testimony to the extent that it suggests that Richie cannot use his hands
3 and wrists and that extreme fatigue prevents him from working an 8-hour day.  The ALJ
4 provided specific, clear, and convincing reasons for rejecting those portions of Richie's
5 testimony about the severity of his symptoms.

### C.    Residual Functional Capacity

Richie contends the ALJ erred by (1) determining Richie's residual functional capacity "without any basis in the record" and (2) by assessing a mental residual functional capacity determination for "unskilled work" instead of a function-by-function assessment. Undoubtedly, the ALJ could have provided more record citations to support his discussion of the evidence, but as discussed above, the ALJ's residual functional capacity assessment is generally consistent with the opinion and records of Richie's treating rheumatologist and Richie's testimony regarding joint pain, knee crepitus, and his daily activities.

There is no dispute that the ALJ provided a function-by-function assessment of Richie's physical residual functional capacity in his determination that Richie:

> has the residual functional capacity to perform to perform light work with restriction as light work is defined in 20 CFR 404.1567(b) and 416.967(b). The claimant should never crawl, crouch, climb, squat, or kneel.  He cannot use his legs or feet for pushing or pulling and cannot use his upper extremities for work above shoulder level.  He can perform only unskilled jobs.

Richie challenges only the ALJ's determination that he can perform only unskilled jobs without specifically finding mental impairments that would prevent him from performing semi-skilled and skilled jobs.

A claimant's residual functional capacity is "what an individual can still do despite his or her limitations."  Social Security Ruling 96-8p.  The residual functional capacity determination is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  *Id.*

- 11 -

1    Social Security Ruling 96-8p explains:

2    At step 4 of the sequential evaluation process, the [residual functional
     capacity] must not be expressed initially in terms of the exertional
3    categories of "sedentary," "light," "medium," "heavy," and "very heavy"
     work because the first consideration at this step is whether the individual
4    can do past relevant work as he or she actually performed it.

5    [Residual functional capacity] may be expressed in terms of an exertional
     category, such as light, if it becomes necessary to assess whether an
6    individual is able to do his or her past relevant work as it is generally
     performed in the national economy. However, without the initial function-
7    by-function assessment of the individual's physical and mental capacities, it
     may not be possible to determine whether the individual is able to do past
8    relevant work as it is generally performed in the national economy because
     particular occupations may not require all of the exertional and
9    nonexertional demands necessary to do the full range of work at a given
     exertional level.

10   At step 5 of the sequential evaluation process, [residual functional capacity]
11   must be expressed in terms of, or related to, the exertional categories when
     the adjudicator determines whether there is other work the individual can
12   do. However, in order for an individual to do a full range of work at a
     given level, such as sedentary, the individual must be able to perform
13   substantially all of the exertional and nonexertional functions required in
     work at that level. Therefore, it is necessary to assess the individual's
14   capacity to perform each of these functions in order to decide which
     exertional level is appropriate and whether the individual is capable of
15   doing the full range of work contemplated by the exertional level.

16   Social Security Ruling 96-8p.

17          Similarly, the ALJ would have been required to provide a function-by-function

18   assessment of Richie's mental residual functional capacity if he had concluded at step 4

19   that Richie could perform past relevant work or at step 5 that Richie could perform semi-

20   skilled or skilled work. Instead, the ALJ found that Richie cannot perform past relevant

21   work but can perform unskilled work without any additional mental limitation. He

22   supported this conclusion with the opinions of a state agency psychologist and a state

23   agency medical consultant who found that Richie can perform simple, repetitive tasks on

24   a sustained basis and on other medical evidence showing that Richie is able to follow

25   simple instructions and maintain adequate concentration.

26          If the ALJ intended to find that Richie had no mental limitations, and therefore

27   should have found Richie able to perform at least semi-skilled work, such error would be

28

harmless. Moreover, the ALJ was not required to provide a function-by-function analysis for impairments that he found neither credible nor supported by the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

IT IS THEREFORE ORDERED affirming the final decision of the Commissioner of Social Security denying Jeremy Scott Richie disability benefits.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant against Plaintiff and that Plaintiff take nothing. The Clerk shall terminate this action.

DATED this 13th day of April, 2012.

_____
Neil V. Wake
United States District Judge

- 13 -